IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | |
|---|---|
| Alex Alvarez, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>The Davey Tree Expert Company, LLC, )<br>)<br>Defendant. )<br>) | Civil Action No. 2:24-cv-02690-DCN-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on The Davey Tree Expert Company, LLC's ("Davey Tree") renewed motion to compel arbitration (doc. 17) and its partial motion to dismiss for failure to state a claim (doc. 18). Pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.), all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## I. BACKGROUND

Plaintiff Alex Alvarez sues his former employer, Davey Tree, alleging race and national origin discrimination, retaliation, hostile work environment, wrongful termination, and civil conspiracy. Alvarez, whose national origin is Cuban, began working for Davey Tree in November 2022 as a tree trimmer (doc. 12 ¶ 12). He reported to Emilio Gomila, who is also Cuban, and worked alongside Jose Gutierrez and Serafin Guzman, both of whom are Mexican (*id.* ¶¶ 14-16). Dennis Jenkins, who is white, served as General Manager and directly supervised Gomila (*id.* ¶ 18).

Alvarez alleges that, starting in December 2022, Jenkins, Guzman, and Gutierrez began making derogatory comments about Cubans, calling them "lazy" and "slow" (*id.* ¶ 19). Alvarez says that he reported these remarks to Gomila and Jorge Sanchez, a general foreman, shortly after they occurred (*id.* ¶ 20). According to Alvarez, Jenkins continued to make disparaging remarks about Cubans from January to May 2023 (*id.* ¶ 21).

Throughout his employment, Alvarez states that he encouraged other workers to report perceived incidents of discrimination, retaliation, and harassment (*id.* ¶ 22). He asserts that after Davey Tree learned of his discussions with other employees, it "intensified its campaign of discrimination, retaliation, and hostile work environment" (*id.* ¶ 23). For example, in January 2023, Davey Tree allegedly reduced Alvarez's pay (*id.* ¶ 24). In March, he applied for, but did not receive, a general foreman position (*id.* ¶ 25). Then, in April, Davey Tree disciplined and suspended Alvarez for "disclos[ing] his pay rate to other employees" (*id.* ¶ 26). When Alvarez returned to work, the company started reducing his hours, stating he was "not qualified to do the job" (*id.* ¶ 27).

On May 21, 2023, Alvarez complained to an individual named Agosto "about the discrimination and harassment he was being subjected to" (*id.* ¶ 28). Alvarez asserts that his concerns went unaddressed and that he faced further "bullying and unfair treatment by [Davey Tree] and its employees" (*id.* ¶ 29). On June 25, 2023, he escalated his concerns to the company's CEO, Patrick Covey (*id.* ¶ 30). Again, Alvarez claims that the company did not act on his complaint and that the alleged mistreatment continued (*id.* ¶ 31).

On June 27, 2023, Alvarez submitted a formal complaint through Davey Tree's internal reporting system, "Ethics Point" (*id.* ¶ 32). A few weeks later, on July 19, 2023, he filed a complaint with the South Carolina Human Affairs Commission (*id.* ¶ 33). On August 3, 2023, an Ethics Point representative informed Alvarez that the investigation into his complaint had concluded (*id.* ¶ 34). The next day, August 4, 2023, Davey Tree terminated Alvarez's employment, citing a "lack of work" available for him (*id.* ¶¶ 35-36). Alvarez, however, contends that the reason given for his firing was pretextual (*id.* ¶ 39). He alleges that Davey Tree fired him (1) because of his Cuban national origin, (2) for complaining of discrimination, and (3) to replace him with an undocumented worker (*id.*).

On April 30, 2024, Alvarez filed suit against Davey Tree, asserting claims for discrimination, retaliation, and hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (doc. 1). On July 5, 2024, Alvarez amended

his complaint to add claims for discrimination, retaliation, and hostile work environment under 42 U.S.C. § 1981; wrongful termination in violation of South Carolina Code Annotated § 41-1-30; and civil conspiracy (doc. 12). On August 2, 2024, Davey Tree filed a renewed motion to compel arbitration (doc. 17)[1] and a partial motion to dismiss Alvarez's wrongful termination and civil conspiracy claims (doc. 18). These motions are fully briefed and ready for review.

## II. APPLICABLE LAW AND ANALYSIS

The undersigned will first address Davey Tree's motion to compel arbitration before turning to its partial motion to dismiss for failure to state a claim.

**A.     Davey Tree's Motion to Compel Arbitration**

The Federal Arbitration Act ("FAA") authorizes "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. In ruling on a motion to compel arbitration, a court considers two questions: (1) whether "an arbitration agreement exists between the parties," and (2) whether "the dispute at issue falls within the scope of [that] agreement." *Hightower v. GMRI, Inc.*, 272 F.3d 239, 242 (4th Cir. 2001); *Muriithi v. Shuttle Express, Inc.*, 712 F.3d 173, 179 (4th Cir. 2013). If both questions are answered affirmatively, the court has "no choice but to grant [the] motion." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002); *see Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." (emphasis in original)).

---

[1] Davey Tree's original motion to compel arbitration (doc. 8), which was directed to the original complaint, was rendered moot by the filing of the amended complaint and the renewed motion to compel arbitration (*see* doc. 19).

Courts evaluate motions to compel arbitration under a summary judgment-like standard. *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019). The party seeking to compel arbitration "bears the burden of establishing the existence of a binding contract to arbitrate the dispute." *Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 867 F.3d 449, 456 (4th Cir. 2017). The court may compel arbitration only if there are no "genuine issues of material fact regarding the existence of an agreement to arbitrate." *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015). But, if the party opposing arbitration "unequivocally denies 'that an arbitration agreement exists,' and 'show[s] sufficient facts in support' thereof," *Berkely Cnty.*, 944 F.3d at 234 (quoting *Chorley Enters.*, 807 F.3d at 564), "the 'court shall proceed summarily' and conduct a trial on the motion to compel arbitration," *id.* (quoting 9 U.S.C. § 4).

### 1. Existence of a valid arbitration agreement

"Whether an agreement to arbitrate was formed is . . . a question of ordinary state contract law principles." *Rowland v. Sandy Morris Fin. & Estate Planning Servs., LLC*, 993 F.3d 253, 258 (4th Cir. 2021). Under South Carolina law, Davey Tree must show "(1) that [Alvarez] had reasonable notice of an offer to enter into an arbitration agreement, and (2) that [Alvarez] manifested [his] assent to that agreement." *Marshall v. Georgetown Mem'l Hosp.*, 112 F.4th 211, 218 (4th Cir. 2024).

To support its initial motion to compel arbitration, Davey Tree submitted a copy of the purported Arbitration Agreement and a one-page document titled "Acknowledgement and Receipt of the Arbitration Agreement" ("Acknowledgement") (docs. 8-2, 8-3).[2] The Acknowledgement, printed on Davey Tree's letterhead, reads:

> I acknowledge that I have received and read a copy of the Arbitration Agreement (the" Arbitration Agreement"); I understand that, if my employment began before March 19, 2022, the Arbitration Agreement would be retroactive to my first day of work once it becomes effective.

---

[2] Davey Tree references these exhibits in its renewed motion to compel arbitration currently before the court (*see* doc. 17-1 at 4-6).

4

> I agree to abide by the terms and conditions of the Arbitration Agreement by signing below. I understand, however, that agreeing to this Arbitration Agreement is not required for employment, and I will not be subject to threats, retaliation, discrimination, or termination if I elect not to sign the Arbitration Agreement.
>
> I also understand that I may opt out of the Arbitration Agreement within 30 days once it takes effect by following the instructions in Section (K) of the Arbitration Agreement.
>
> **By signing below, I acknowledge that I have read and understand the Arbitration Agreement and voluntarily agree to be bound by the Arbitration Agreement:**

(Doc. 8-2 at 2). Alvarez's printed name and electronic signature appear beneath this text, alongside the date "11/18/2022" (*id.*). According to Davey Tree, the signed Acknowledgement establishes that Alvarez agreed to be bound by the Arbitration Agreement (doc. 17-1 at 8-9).

Alvarez counters that "there is no evidence [he] was presented with, or agreed to, the terms of the [A]rbitration [A]greement" because the Acknowledgement he allegedly signed differs "from the [one] attached to the [A]rbitration [A]greement submitted by [Davey Tree]" (doc. 25 at 4) (emphasis removed). As Alvarez points out, the Arbitration Agreement attached as Exhibit 2 to Davey Tree's initial motion appears as a "five-page Appendix to an unknown document" (*id.*). The last page, numbered "A-5," contains an unsigned acknowledgement form that is identical in substance to the Acknowledgement attached as Exhibit 1 (*compare* doc. 8-2 at 2 *with* doc. 8-3 at 6). Alvarez contends that the presence of this unsigned acknowledgement page at the end of the Arbitration Agreement calls into question the validity of the separate, signed Acknowledgement. As a result, he argues, a trial is necessary to determine whether the parties formed a valid arbitration agreement.

In the undersigned's view, however, Alvarez has failed to create a genuine issue of material fact about whether he assented to the terms of the Arbitration Agreement. To begin, by signing the Acknowledgement, Alvarez (1) confirmed he had "received and read a copy of the Arbitration Agreement" and (2) "agree[d] to be bound by [it]" (doc. 8-2 at 2). *See Lampo v. Amedisys Holding, Inc.*, 877 S.E.2d 486, 490 (S.C. Ct. App. 2022)

("[A]n employer may conclusively prove an employee has actual notice of the terms of the employment agreement if the employee signed an acknowledgment form stating she received the agreement and promised to review it. This is true even if the employee has electronically signed the acknowledgment form." (internal citation omitted)); *Towles v. United HealthCare Corp.*, 524 S.E.2d 839, 845 (S.C. Ct. App. 1999) ("After receiving and signing the Acknowledgment, Towles cannot legitimately claim United failed to provide actual notice of the arbitration provisions . . . ."). Further, beyond his bare assertion, Alvarez has not presented any evidence disputing that he received the Arbitration Agreement or challenging the authenticity of his electronic signature on the Acknowledgement. *See Chorley Enters.*, 807 F.3d at 564 ("[T]he party seeking a jury trial must make an unequivocal denial that an arbitration agreement exists — *and must also show sufficient facts in support*." (emphasis added)); *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995) ("[T]he party opposing [arbitration] may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried."); *cf. Kneece v. Syneos Health US, Inc.*, No. 6:22-cv-2776-TMC-KFM, 2023 WL 4998558, at *4 (D.S.C. Feb. 27, 2023) (finding a genuine dispute of material fact where the plaintiff submitted declarations from herself and four of the defendant's former employees), *R&R adopted by* 2023 WL 4557711 (D.S.C. July 17, 2023). Nor has he offered any reason to believe that the "Arbitration Agreement" referenced in the Acknowledgement refers to some document other than the one attached as Exhibit 2.

Additional evidence submitted with Davey Tree's reply further undermines Alvarez's claim that he did not receive or agree to the Arbitration Agreement.[3] Matthew Daddario, a human resources analyst with Davey Tree, explained that all new hires receive

---

[3] "While '[n]ew evidence is not properly considered if offered for the first time in support of a reply brief, . . . evidence can be offered to rebut a point raised in an opposition brief.'" *Parker v. Alcon Mgm't S.A.*, C.A. No. 21-14068, 2022 WL 3905872, at *3 (11th Cir. Aug. 31, 2022) (quoting *Thompson v. Alabama*, 428 F. Supp. 3d 1296, 1307 (M.D. Ala. 2019)); *see Brown v. MUY Pizza-Tejas, LLC*, C.A. No. 1:23-cv-1816-MLB, 2024 WL 3491659, at *5 (N.D. Ga. July 18, 2024) (considering the declaration of an HR manager attached to a reply brief because it was offered to rebut "assertions that [certain plaintiffs] did not sign the Agreements [to Arbitrate] and that the[ir] signatures were not authentic").

an "envelope" of documents via Docusign during the onboarding process[4] (doc. 27-1 ¶ 7). This envelope includes the company's Employee Handbook, the Arbitration Agreement (found in Appendix A of the Handbook), and the Acknowledgement (*id.* ¶ 8). All documents in the envelope bear the same Docusign ID number at the top of each page (*id.* ¶ 9). "This ID number is unique to the recipient of the documents in the envelope" and allows "Human Resources to locate an individual employee's onboarding records" and "audit the employee's onboarding activity" (*id.*).

Daddario attached to his declaration "true and accurate cop[ies]" of the Employee Handbook, Arbitration Agreement, and Acknowledgment that Alvarez received during his onboarding (*id.* ¶ 14, *id.* at 5-66). Each of these documents bears the same Docusign ID number — DBC66A67-DE6C-4BB1-B3A1-52135C717D59[5] (*id.* at 5-66). Daddario also attached a "true and accurate copy" of the audit report associated with this ID number (*id.* ¶ 15, *id.* at 67-73). The audit report shows that Alvarez opened the envelope at 3:23:28 p.m. on November 11, 2022, viewed the documents at 3:23:39 p.m., and signed them at 3:24:23 p.m. (*id.* at 68). Copies of the Acknowledgement and Employee Handbook containing the Arbitration Agreement were then sent to his email a few seconds later (*id.* at 70).

Based on this record, Alvarez has failed to come forward with "sufficient facts," *Chorley Enters.*, 807 F.3d at 564, to put "the making of the [A]rbitration [A]greement . . . in issue," 9 U.S.C. § 4. Accordingly, Alvarez is not entitled to a trial under § 4, and the undersigned will next consider whether his claims fall within the scope of the parties' agreement.

---

[4] Docusign is a "well-recognized online platform for signing and transmitting documents." *Rowland*, 993 F.3d at 256.

[5]  This ID number appears at the top of the Acknowledgement that Davey Tree submitted as Exhibit 1 in support of its initial motion to compel arbitration (*see* doc. 8-2 at 2).

## 2. The scope of the parties' arbitration agreement

The Supreme Court has "consistently encouraged a healthy regard for the federal policy favoring arbitration," *Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011) (internal quotation marks omitted), and instructed that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Thus, a court "may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Long v. Silver*, 248 F.3d 309, 316 (4th Cir. 2001) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)).

Here, the scope of the Arbitration Agreement is expansive — it requires that the parties arbitrate "any Claim that arises out of or relates to the employment or benefits of a Covered Employee" (doc. 27-1 at 59). The Agreement is "intended to be broadly interpreted" and "includes but is not limited to":

- Claims arising out of or relating to employment, the conditions or termination of employment, an application for employment, or to promotions, demotions, suspensions, or disciplinary actions;

- Claims arising out of or relating to wages, benefits, or other compensation;
  . . .

- Claims concerning discrimination, harassment, or retaliation (including, but not limited to, claims based on race, sex, sexual orientation, religion, national origin, age, disability, or any other trait or characteristic, and claims based [on] whistleblower activity or engaging in protected activity); [and]

- Claims asserting a violation of Title VII of the Civil Rights Act of 1964[.]

(*Id.*). Given the breadth of this language, the undersigned concludes that the Arbitration Agreement covers the claims raised in Alvarez's amended complaint.

### 3. Whether to stay or dismiss the proceedings

In addition to seeking an order compelling arbitration, Davey Tree requests that the district court dismiss the claims against it, or alternatively, stay the case pending arbitration.

"When a valid agreement to arbitrate exists between the parties and covers the matter in dispute, the FAA commands the federal courts to stay any ongoing judicial proceedings, 9 U.S.C. § 3, and to compel arbitration, id. § 4." *Hooters of Am., Inc. v. Phillips*, 173 F. 933, 937 (4th Cir. 1999). Despite the "mandatory" nature of § 3, *Adkins*, 303 F.3d at 500, some circuits, including the Fourth Circuit, have held that dismissal may be "a proper remedy when all of the issues presented in a lawsuit are arbitrable," *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001); *see also Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 376 n.18 (4th Cir. 2012) (recognizing that "[t]here may be some tension" between its decisions in *Hooters*, which "indicat[ed] that a stay is required when the arbitration agreement 'covers the matter in dispute,'" and *Choice Hotels*, which "sanction[ed] dismissal 'when all of the issues presented . . . are arbitrable'").

The Supreme Court recently clarified, however, that § 3 "overrides any discretion a district court might otherwise have had to dismiss a suit when the parties have agreed to arbitration." *Smith v. Spizzirri*, 601 U.S. 472, 477 (2024). Thus, "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Id.* at 478.

In light of *Spizzirri*, the undersigned recommends that the district court stay this matter pending arbitration. *See, e.g.*, *Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702, 711 (9th Cir. 2024) ("Since *Spizzirri* made clear that a district court does not have discretion to dismiss the action when granting a motion to compel arbitration under 9 U.S.C. § 3, the court is compelled to grant Cathay Pacific's alternative request for a stay."); *Newman v. Ambry Genetics Corp.*, C.A. No. 2:24-cv-00887-BHH-MGB, 2024 WL 3811606, at *1 n.2 (D.S.C. Aug. 14, 2024) ("After review of [*Spizzirri*], the Court finds that the instant case should be stayed, rather than dismissed without prejudice."); *Multari v. Fakhoury*, C.A.

No. 5:23-cv-631-D, 2024 WL 3166897, at *5 (E.D.N.C. June 25, 2024) (staying case over the defendant's request for dismissal). Should the district court adopt this recommendation, the undersigned further recommends denying Davey Tree's partial motion to dismiss as moot.

B.     **Davey Tree's Partial Motion to Dismiss**

In the event the district court does not compel arbitration, the undersigned addresses the merits of Davey Tree's partial motion to dismiss below.

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "'[D]etailed factual allegations'" are not required, but the plaintiff must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). In reviewing the complaint, the court "must accept the factual allegations of the complaint as true and construe them in the light most favorable to the nonmoving party." *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145 (4th Cir. 2018).

1.     **Alvarez's civil conspiracy claim**

To state a civil conspiracy claim, a plaintiff must allege four elements: "(1) the combination or agreement of two or more persons, (2) to commit an unlawful act or a lawful act by unlawful means, (3) together with the commission of an overt act in furtherance of the agreement, and (4) damages proximately resulting to the plaintiff." *Paradis v. Charleston Cnty. Sch. Dist.*, 861 S.E.2d 774, 780 (S.C. 2021). Because "civil conspiracy is an intentional tort, an intent to harm . . . [is] an inherent part of th[is] analysis." *Id.* at 780 n.9. A plaintiff asserting a civil conspiracy claim must also allege acts "in furtherance of the

conspiracy in a manner separate and independent from [his or her] other causes of action." *Jinks v. Sea Pines Resort, LLC*, C.A. No. 9:21-cv-00138-DCN, 2021 WL 4711408, at *3 (D.S.C. Oct. 8, 2021).  "[T]he failure to properly plead such acts will merit the dismissal of the claim."  *Hackworth v. Greywood at Hammett, LLC*, 682 S.E.2d 871, 875 (S.C. Ct. App. 2009), *overruled on other grounds by Paradis*, 861 S.E.2d 774; *see also Todd v. S.C. Farm Bureau Mut. Ins. Co.*, 278 S.E.2d 607, 611 (S.C. 1981) ("Where the particular acts charged as a conspiracy are the same as those relied on as the tortious act or actionable wrong, [the] plaintiff cannot recover damages for such act or wrong, and recover likewise on the conspiracy to do the act or wrong."), *overruled on other grounds by Paradis*, 861 S.E.2d 774.

The thrust of Alvarez's civil conspiracy claim is that Jenkins, Guzman, Gutierrez, and others at Davey Tree conspired with unidentified undocumented workers to "terminate [Alvarez's] employment, remove [his] duties, and replace [him] with undocumented workers/unauthorized aliens" (doc. 12 ¶ 106).  Davey Tree argues that Alvarez's claim fails because, as an at-will employee, Alvarez "may not maintain a civil conspiracy action against [his] employer for actions resulting in termination" (doc. 18-1 at 7) (quoting *Killian v. City of Abbeville*, C.A. No. 8:14-cv-1078-TMC, 2015 WL 1011339, at *3 (D.S.C. Mar. 6, 2015)).  The undersigned agrees.

"South Carolina has embraced the general rule that . . . an [at-will] employment [contract] may be terminated at any time for any reason or for no reason at all." *Ross v. Life Ins. Co. of Va.*, 259 S.E.2d 814, 815 (S.C. 1979).  This rule bars an at-will employee from "maintain[ing] an action against a former employer for civil conspiracy that resulted in the employee's termination."  *Angus v. Burroughs & Chapin Co.*, 596 S.E.2d 67, 70 (S.C. Ct. App. 2004) *rev'd on other grounds* 628 S.E.2d 261 (S.C. 2006); *Faile v. Lancaster Cnty., S.C.*, No. 0:11-cv-2206-CMC, 2013 WL 786447, at *5 (D.S.C. Mar. 1, 2013) ("[A] civil conspiracy claim by an at-will employee against an employer *arising out of the employee's termination* is barred . . . ." (emphasis in original)).

In arguing against dismissal, Alvarez contends that his claim is based not on his termination, but rather on Davey Tree's "plan to transfer [his] working hours and duties to an undocumented worker" (doc. 22 at 5). The amended complaint, however, clearly alleges that Alvarez's termination was a product of the alleged conspiracy (*see* doc. 12 ¶ 106) ("Jenkins, Guzman, Gutierrez, Defendant Davey Tree Expert Company, and others[] conspired with each other and . . . with undocumented workers/unauthorized aliens *to terminate Plaintiff's employment* . . . ." (emphasis added)). For this reason, Alvarez has failed to state a claim for civil conspiracy.

### 2. Alvarez's wrongful termination claim

The South Carolina Illegal Immigration Reform Act creates a cause of action for "wrongful termination against an employer who discharges an employee authorized to work in the United States for the purpose of replacing that employee with a person the employer knows or should reasonably know is an unauthorized alien." S.C. Code Ann. § 41-1-30(A). To prevail in such an action, an aggrieved employee must show:

> (a) the replacement occurred within sixty days of the date of the employee's termination;
>
> (b) the replacement worker was an unauthorized alien at the time of the replacement;
>
> (c) the employer knew or reasonably should have known of the replacement worker's status; and
>
> (d) the replacement worker filled duties and responsibilities the employee vacated.

*Id.* § 41-1-30(B). The Act also provides an affirmative defense for an employer "who submits the necessary identifying information for all employees through the Systematic Alien Verification of Entitlement (SAVE) program, the E-Verify Program or a successor program used for verification of work authorization and operated by the United States Department of Homeland Security." *Id.* § 41-1-30(E).

In support of his wrongful termination claim, Alvarez alleges the following:

> 99. During the relevant time period, Plaintiff was, and continues to be, a person authorized to work in the United States.

12

> 100. During Plaintiff's employment with Defendant, Defendant knowingly hired undocumented workers (also known as an "unauthorized aliens").
>
> 101. Defendant knew or had reason to know the workers it was hiring were "unauthorized aliens" because Defendant did not submit the necessary identifying information for all of its employees through the Systematic Alien Verification of Entitlement (SAVE) program, the E-Verify Program, or a successor program used for verification of work authorization and operated by the United States Department of Homeland Security.
>
> 102. The undocumented workers that were hired by Defendant filled the position and took over the position and duties assigned to Plaintiff.

(Doc. 12 ¶¶ 99-103).

In the undersigned's view, these allegations lack sufficient factual support "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Notably, the amended complaint is silent on the identity of the workers who replaced Alvarez and when they did so. It also fails to provide any facts, beyond a conclusory assertion, indicating that these individuals were not authorized to work in the United States. *See In re Birmingham*, 848 F.3d 88, 92 (4th Cir. 2017) ("[A] complaint is insufficient if it relies upon 'naked assertions' and 'unadorned conclusory allegations' devoid of 'factual enhancement.'" (quoting *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)). Alvarez contends that he is not required to know this information at the pleading stage and may instead uncover it during discovery (doc. 22 at 6-7). However, the Supreme Court has made clear that a plaintiff is not entitled to discovery to fill in the gaps left by a deficient complaint. *Iqbal*, 556 U.S. at 678-79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *Twombly*, 550 U.S. at 559 ("It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through careful case management . . . . (internal quotation marks omitted)). "Insofar as [Alvarez] is unaware of adequate facts to support a plausible claim for relief, his inability to marshal additional facts absent discovery cannot save his

13

conclusory and speculative allegations from dismissal." *Desper v. Clarke*, 1 F.4th 236, 249 (4th Cir. 2021) (quoting *Tickles v. Johnson*, 805 F. App'x 204, 208 (4th Cir. 2020)).

### III. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the district court grant Davey Tree's motion to compel arbitration (doc. 17), deny its partial motion to dismiss for failure to state a claim (doc. 18) as moot, and stay this matter pending arbitration. The undersigned further recommends that the parties be required to jointly file a status report every sixty days until arbitration is completed. Alternatively, if the district court does not compel arbitration, the undersigned recommends that it grant the partial motion to dismiss and dismiss Alvarez's claims for civil conspiracy and wrongful termination.[6]

IT IS SO RECOMMENDED.

s/Kevin F. McDonald
United States Magistrate Judge

October 9, 2024
Greenville, South Carolina

**The attention of the parties is directed to the important notice on the next page.**

---

[6] In his memorandum in opposition to the partial motion to dismiss, Alvarez requests leave to amend in the event the district court finds his allegations insufficient to withstand dismissal. The undersigned declines to address this request. *TransEnterix Invest. Grp. v. TransEnterix, Inc.*, 272 F. Supp. 3d 740, 762 (E.D.N.C. 2017) ("Under Rule 7(b)(1) of the Federal Rules of Civil Procedure, '[a] request for a court order must be made by motion.' A responsive brief is not an appropriate means to request leave to amend a complaint."); *see ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 917 F.3d 206, 218 (4th Cir. 2019); *Cozzarelli v. Inspire Pharms, Inc.*, 549 F.3d 618, 630-31 (4th Cir. 2008).

### *Notice of Right to File Objections to Report and Recommendation*

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 250 East North Street, Suite 2300
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).